# In the United States Court of Federal Claims

No. 24-1540C

(Filed: November 5, 2025)

|  |  |
|---|---|
| **LEOPOLD ROMAN BRANDENBURG, SR.,** | ) ) ) ) ) |
| *Plaintiff,* | ) ) |
| v. | ) ) |
| **THE UNITED STATES,** | ) ) ) |
| *Defendant.* | ) ) ) |

*Leopold Roman Brandenburg, Sr.*, Lauderhill, Florida, United States, *pro se*.

*Rebecca T. Mitchell*, Trial Attorney, Commercial Litigation Branch, U.S. Department of Justice, for Defendant. With her on the briefs were *Yaakov M. Roth*, Acting Assistant Attorney General, *Patricia M. McCarthy*, Director, and *Tara K. Hogan,* Assistant Director.

**OPINION AND ORDER**

*SOLOMSON*, **Chief Judge.**

On September 30, 2024, Plaintiff, Leopold Roman Brandenburg, Sr., proceeding *pro se*, filed a complaint in this Court against Defendant, the United States. *See* ECF No. 1 ("Compl."). Mr. Brandenburg, a former employee of the U.S. Department of State ("DOS"), seeks the waiver of a debt — arising from a salary overpayment — pursuant to 5 U.S.C. § 5584. *Id*. at 2. Mr. Brandenburg argues that he is not at fault for the government's salary overpayment, and that he meets the criteria for a waiver as provided in "Chapter Seven of the Treasury Debt Management System, Bureau of the Fiscal Service." *Id*. at 2, 5. In addition to a waiver of the entire debt created by the overpayment, Mr. Brandenburg claims he is entitled to a refund of the money he already repaid to the government. *Id*. at 3.

On February 20, 2025, the government moved to dismiss Mr. Brandenburg's complaint for both lack of jurisdiction and failure to state a claim upon which relief may be granted, pursuant to Rules 12(b)(1) and 12(b)(6) of the Rules of the United States Court of Federal Claims ("RCFC"), respectively. ECF No. 13 ("Def. MTD"). For the reasons explained below, the Court grants the government's motion and dismisses Mr. Brandenburg's complaint for lack of subject-matter jurisdiction and for failure to state a claim upon which relief may be granted.

I.   FACTUAL AND PROCEDURAL HISTORY[1]

In August 2013, Mr. Brandenburg was reassigned from the DOS to the Social Security Administration ("SSA") at a lower pay grade. Pl. Ex. 9-1 at 2. For approximately one year following his reassignment, from August 2013 through August 2014, the DOS erroneously continued to pay Mr. Brandenburg, resulting in a net overpayment to Mr. Brandenburg in the amount of $103,321.00. *Id*. at 8. He alleges that the DOS "purposely continued the salary for exactly a year after separation, as a form of unofficial remedies and compensation for Plaintiff's unjust separation from his job and reassignment to a lower grade." Compl. at 2. In short, Mr. Brandenburg appears to contend that the salary payments from DOS were not overpayments at all, but that he was somehow properly paid by the agency where he no longer worked. The DOS, however, notified Mr. Brandenburg of his overpayment debt via letter dated October 13, 2015. Pl. Ex. 9-1 at 1. On November 15, 2015, Mr. Brandenburg requested a waiver of the debt, explaining that the government's collection of the overpaid salary would reduce or eliminate his retirement annuity and have a devastating impact on his and his family's lives. *Id*. at 2.

By letter dated March 28, 2019, the DOS denied Mr. Brandenburg's request for a waiver. Pl. Ex. 9-1 at 1. The DOS cited the applicable statute, 5 U.S.C. § 5584, which provides the agency with the authority to waive debts to the United States arising out of erroneous salary payments "if collection would be 'against equity and good conscience

---

[1] Unless otherwise noted, all facts are drawn from Mr. Brandenburg's complaint, ECF No. 1, the exhibits that this Court permitted Mr. Brandenburg to file, ECF No. 9 ("Pl. Ex."), as well as several administrative and judicial opinions in the public record. All page numbers reference the PDF numbers in the headers of the ECF documents. For purposes of resolving the government's motion to dismiss, this Court assumes that all non-conclusory facts asserted in the complaint are true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("[F]or the purposes of a motion to dismiss we must take all of the factual allegations in the complaint as true." (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

2

and not in the best interests of the United States,'" but not "if there exists in connection with the claim 'an indication of fraud, misrepresentation, fault, or lack of good faith on the part of the employee[.]'" *Id.* at 7 (quoting 5 U.S.C. § 5584). The DOS determined that Mr. Brandenburg was at "fault" within the meaning of the statute and therefore ineligible for a waiver of his debt.[2]  *Id.* at 7-8.

On May 17, 2019, Mr. Brandenburg filed an Equal Employment Opportunity ("EEO") complaint against DOS, alleging that the agency's attempt to collect his overpayment debt amounted to unlawful retaliation for a prior EEO complaint he had filed in response to his reassignment to the SSA. *Charlie O. v. Blinken*, EEOC DOC 2020001986, 2021 WL 3110039, at *2 (June 28, 2021). The EEOC affirmed the DOS's decision, *id.* at *5, dismissing Mr. Brandenburg's complaint, and subsequently denied his request for reconsideration. *Charlie O. v. Blinken*, EEOC DOC 2021004353, 2021 WL 5890844, at *2 (Nov. 29, 2021).

Mr. Brandenburg then turned to federal court. He filed a complaint in the United States District Court for the Southern District of Florida challenging both the denial of his overpayment waiver request and his "unjustified termination of employment" with the DOS. *Brandenburg v. Blinken*, 2023 WL 4450139, at *3 (D.D.C. July 11, 2023), *appeal transferred sub nom.*, *Brandenburg v. U.S. Dep't of State*, 2023 WL 8641382 (Fed. Cir. Dec. 14, 2023), *aff'd*, 2024 WL 2152116 (D.C. Cir. May 14, 2024). On July 20, 2022, the case was transferred to the United States District Court for the District of Columbia. *Brandenburg*, 2023 WL 4450139, at *3. The district court dismissed his wrongful termination claim for failure to exhaust administrative remedies and dismissed his challenge to the waiver denial for failure to state a claim — whether construed as a claim pursuant to (1) the Administrative Procedure Act, 5. U.S.C. § 700, *et seq.*, or (2) Title VII, 42 U.S.C. § 2000e, *et seq. Id.* at *6-7. Mr. Brandenburg appealed to the United States Court of Appeals for the Federal Circuit, our appellate court, which in turn transferred the case to the United States Court of Appeals for the District of Columbia. *Brandenburg v. U.S. Dep't of State*, 2023 WL 8641382, at *1 (Fed. Cir. Dec. 14, 2023). The D.C. Circuit affirmed the district court's decision, *Brandenburg v. U.S. Dep't of State*, 2024 WL 2152116, at *1 (D.C. Cir. May 14,

---

[2] According to the DOS, Mr. Brandenburg was "at fault" because he knew he was receiving salary payments and failed to "verify the accuracy and correctness of the Earnings and Leave Statements" and "report the errors in a timely manner." Pl. Ex. 9-1 at 7-8. The DOS did not credit as reasonable Mr. Brandenburg's belief that the overpayment was a form of compensation for a previous dispute with the agency, because, had that been the case, he "would have received official documents from the Department clearly documenting any resolution or outcome" of the matter. *Id.* at 8.

3

2024), and denied his petition for a rehearing *en banc*. *Brandenburg v. U.S. Dep't of State*, 2024 WL 4093203, at *1 (D.C. Cir. Aug. 30, 2024).

On September 24, 2024, Mr. Brandenburg filed a complaint against the government in this Court, once again challenging the denial of his overpayment waiver request and seeking "a waiver of the entire overpaid amount, which is $103,321.00[,]" as well as a refund of the funds already repaid. Compl. at 3. On February 20, 2025, the government filed a motion to dismiss pursuant to RCFC 12(b)(1) and 12(b)(6). Mr. Brandenburg filed his response to the government's motion to dismiss on April 24, 2025. ECF No. 16 ("Pl. Resp."). On May 8, 2025, the government filed its reply brief. ECF No. 17 ("Def. Rep.").

## II. JURISDICTION

The jurisdiction of the Court of Federal Claims is defined by the Tucker Act, 28 U.S.C. § 1491, which grants the Court "jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort." 28 U.S.C. § 1491(a)(1); *see RadioShack Corp. v. United States*, 566 F.3d 1358, 1360 (Fed. Cir. 2009) ("The jurisdiction of the Court of Federal Claims is defined by the Tucker Act, which gives the court authority to render judgment on certain monetary claims against the United States." (citation omitted)). Thus, the Tucker Act vests this court with jurisdiction and waives the sovereign immunity of the United States for "actions pursuant to contracts with the United States, actions to recover illegal exactions of money by the United States, and actions brought pursuant to money-mandating statutes, regulations, executive orders, or constitutional provisions." *Roth v. United States*, 378 F.3d 1371, 1384 (Fed. Cir. 2004).

The Tucker Act, however, "does not create a substantive cause of action." *Fisher v. United States*, 402 F.3d 1167, 1172 (Fed. Cir. 2005) (en banc). Rather, "a plaintiff must identify a separate source of substantive law that creates the right to money damages." *Id.* (citations omitted). For money-mandating claims, a plaintiff must identify a law that "can fairly be interpreted as mandating compensation by the Federal Government for the damage sustained." *Eastport S.S. Corp. v. United States*, 372 F.2d 1002, 1009 (Ct. Cl. 1967). For illegal exactions, "a plaintiff's complaint must contain nonfrivolous *factual* allegations that the plaintiff is entitled to recover money for the

4

government's purported improper action." *Perry v. United States*, 149 Fed. Cl. 1, 13 (2020) (citations omitted), *aff'd*, 2021 WL 2935075 (Fed. Cir. July 13, 2021). However, "[t]hreadbare recitals of [claim] elements . . ., supported by mere conclusory statements, do not suffice to confer jurisdiction." *Id.* at 11 (quoting *Crow Creek Sioux Tribe v. United States*, 900 F.3d 1350, 1355 (Fed. Cir. 2018)).

A *pro se* plaintiff's pleadings are held to "less stringent standards." *Haines v. Kerner*, 404 U.S. 519, 520 (1972) (per curiam). Nevertheless, "even *pro se* plaintiffs must persuade the court that jurisdictional requirements have been met." *Hale v. United States*, 143 Fed. Cl. 180, 184 (2019) (citation omitted); *see also Colbert v. United States*, 617 F. App'x 981, 983 (Fed. Cir. 2015) ("No plaintiff, pro se or otherwise, may be excused from the burden of meeting the court's jurisdictional requirements."). In the absence of subject-matter jurisdiction, the Court "must dismiss the claim." *Kissi v. United States*, 493 F. App'x 57, 58 (Fed. Cir. 2012) (citing RCFC 12(h)(3)).

### III. Mr. Brandenburg's Claims are Not Within This Court's Jurisdiction Or Must Be Dismissed For Failure To State A Claim Upon Which Relief May Be Granted

Taking into consideration Mr. Brandenburg's *pro se* status by broadly construing his complaint — and, of course, assuming that all of his non-conclusory *factual* allegations are true — this Court nevertheless concludes that Mr. Brandenburg's claims either fall outside of this Court's jurisdiction or fail to state a claim upon which relief may be granted. For the reasons explained below, Mr. Brandenburg's claims must be dismissed.

#### A. A Claim for Debt Cancellation is Not Within this Court's Tucker Act Jurisdiction

Mr. Brandenburg is primarily seeking a waiver of his salary overpayment debt or, in other words, a declaratory judgment that would cancel the debt he presently owes the government. *See* Compl. at 3. Under the Tucker Act, however, "the court's jurisdiction extends only to cases concerning 'actual, presently due money damages from the United States.'" *Johnson v. United States*, 105 Fed. Cl. 85, 94 (2012) (quoting *Todd v. United States*, 386 F.3d 1091, 1093 (Fed. Cir. 2004)). As the Federal Circuit has noted, "[t]here is a substantive difference between a plaintiff seeking the return of money it already paid the government and a plaintiff never having to pay the government in the first place," because, in the latter scenario, the plaintiff "is not seeking to recover monetary damages from the United States, but simply seeking relief of obligations to pay the government."

*Flander v. United States*, 737 F. App'x 530, 532 (Fed. Cir. 2018) (quoting *Gonzales & Gonzales Bonds & Ins. Agency, Inc. v. Dep't of Homeland Sec.*, 490 F.3d 940, 945 (Fed. Cir. 2007)).  For that reason, "[d]ebt cancellation does not constitute monetary damages under the Tucker Act, and thus lies outside the jurisdiction of the Court of Federal Claims."  *Id.; see also McCarthy v. United States*, 171 Fed. Cl. 469, 480 (2024) ("[C]laims for cancellation of debts are not claims for money damages, and a declaratory judgment is not 'incidental of and collateral to' a money judgment just because it would have the impact of canceling a debt." (quoting *Flander*, 737 F. App'x at 532)); *Gonzales*, 490 F.3d at 945 (holding that the jurisdiction for "debt cancellation claims" does not "lie in the Court of Federal Claims").  Therefore, insofar as Mr. Brandenburg seeks a cancellation of his salary overpayment debt, his claim must be dismissed for lack of jurisdiction.

Relatedly, Mr. Brandenburg also seeks "to have his name cleared of any wrongdoing," which this Court similarly understands as a request for a declaratory judgment.  Compl. at 3.  As the government correctly contends, however, equitable relief is only available in this Court "as an incident of and collateral to" a money judgment.  28 U.S.C. § 1491(a)(2); *see Alvarado Hosp., LLC v. Price*, 868 F.3d 983, 987 (Fed. Cir. 2017) ("[The] Court of Federal Claims does not [generally] have jurisdiction . . . over . . . claims seeking declaratory, injunctive, and mandamus relief[.]").  In this case, Mr. Brandenburg pleads no facts, which, even if proven, would entitle him to a money judgment, let alone to some sort of equitable relief.

Accordingly, this Court lacks jurisdiction to decide Mr. Brandenburg's requests for declaratory judgments, both as to his salary overpayment claim and "to have his name cleared of any wrongdoing."  Compl. at 3.  To the extent Mr. Brandenburg seeks such nonmonetary remedies, this Court dismisses his claims for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1).

### B. Mr. Brandenburg's Claim Pursuant to 5 U.S.C. § 5584 Fails Because that Statute is Not "Money-Mandating"

A statute or regulation is money-mandating for Tucker Act jurisdictional purposes if it "can be fairly interpreted as mandating compensation by the federal government for the damages sustained."  *United States v. White Mountain Apache Tribe*, 537 U.S. 465, 472 (2003) (quoting *United States v. Mitchell*, 463 U.S. 206, 217 (1983)); *see Lyon v. United States*, 161 Fed. Cl. 88, 93-94 (2022) ("[T]he statute in question must be one that is 'reasonably amenable to the reading that it mandates a right to recovery in damages.'" (quoting *White Mountain Apache Tribe*, 537 U.S. at 473)).  Therefore, the question of whether a statute is

6

money-mandating "generally turns on whether the government has discretion to refuse to make payments under the statute." *ARRA Energy Co. I v. United States*, 97 Fed. Cl. 12, 19 (2011).  If a statute vests a government official or agency with "substantial discretion" to decide whether to compensate an individual or group, it will not be deemed money-mandating.  *Price v. Panetta*, 674 F.3d 1335, 1339 (Fed. Cir. 2012) ("A statutory or regulatory provision that grants a government official or agency substantial discretion to decide whether to expend government funds in a particular way is not considered money-mandating[.]" (citing *Barnick v. United States*, 591 F.3d 1372, 1378 (Fed. Cir. 2010)); *see also Lyon*, 161 Fed. Cl. at 96 ("The circuit has consistently held that statutes that simply authorize, but do not require, the payment of money are not money-mandating."); *Wolfchild v. United States*, 731 F.3d 1280, 1292 (Fed. Cir. 2013) ("We have long recognized that statutes granting officials 'substantial discretion' are 'not considered money-mandating[.]'" (quoting *Price*, 674 F.3d at 1339)).  When a statute employs discretionary language, such as the term "may," a "very strong but rebuttable presumption arises that the provision is non-money-mandating."  *Bell v. United States*, 20 F.4th 768, 770 (Fed. Cir. 2021).[3]

In this case, Mr. Brandenburg asserts that the DOS erred in denying his request for a waiver of his overpayment debt pursuant to 5 U.S.C. § 5584.  Section 5584 of Title 5 of the United States Code, however, is not a money-mandating statute capable of supporting a Tucker Act claim.  Section 5584, in relevant part, provides:

> A claim of the United States against a person arising out of an erroneous payment of pay or allowances . . . the collection of which would be against equity and good conscience and not in the best interests of the United States, *may* be waived in whole or in part by— (1) the authorized official; [or] (2) the head of the agency . . .

5 U.S.C. § 5584(a) (emphasis added).  Section 5584(b) further provides:

> The authorized official or the head of the agency, as the case may be, *may not* exercise his authority under this section to waive any claim—

---

[3] *But see Doe v. United States*, 100 F.3d 1576, 1582 (Fed. Cir. 1996) (holding that 19 U.S.C. § 1619, the moiety statute, is money-mandating because it "require[s] the payment of some award to claimants" and "[t]he fact that the Secretary retains some discretion to determine the amount of an award, within prescribed limits, does not preclude the statute from being money mandating" (citation omitted)).

7

> (1) if, in his opinion, there exists, in connection with the claim, an indication of fraud, misrepresentation, fault, or lack of good faith on the part of the employee or any other person having an interest in obtaining a waiver of the claim . . .

5 U.S.C. § 5584(b)(1) (emphasis added).

Pursuant to the plain language of that statute, the decision whether to waive an employee's debt is expressly committed to the discretion of the agency official, who "*may*" choose to do so when collection "would be against equity and good conscience and not in the best interests of the United States." 5 U.S.C. § 5584(a) (emphasis added); *see Barnick*, 591 F.3d at 1378 (finding a statute not money-mandating because it merely permits certain payments "if the Secretary determines that it is in the interests of fairness and equity"). Moreover, the non-money-mandating presumption that arises from the usage of the term "may" in § 5584 is not undermined by any "obvious inference[] from the structure and purpose of the provision." *Bell*, 20 F.4th at 770 (internal quotation omitted). Indeed, the structure of the statute makes clear that even absent the specified bars to waiver delineated in subsection (b)(1) — fraud, misrepresentation, fault, or lack of good faith — the responsible agency official is left with complete discretion to grant or deny all waiver requests. A debt waiver is simply not available as of right.

For these reasons, several judges of this Court have previously held that 5 U.S.C. § 5584 is not money-mandating. *See Faison v. United States*, 102 Fed. Cl. 637, 642 (2012) (Hewitt, J.) (citing 5 U.S.C. § 5584 as an example of a "statutory grant of discretion" sufficient to "defeat[] the interpretation of the statute as money-mandating"); *Woodruff v. United States*, 80 Fed. Cl. 806, 813 (2008) (Horn, J.) ("5 U.S.C. § 5584 does not mandate the payment of money."); *Lawrence v. United States*, 69 Fed. Cl. 550, 556 (2006) (Williams, J.) ("5 U.S.C. § 5584 cannot be fairly interpreted as mandating payment of money and cannot form the basis of this Court's Tucker Act jurisdiction."), *aff'd*, 206 F. App'x 993 (Fed. Cir. 2006). In both *Woodruff* and *Lawrence*, this Court read the statutory limitations provided in § 5584(b)(1) as further evidence of the otherwise complete discretion granted to the agency officials in § 5584(a). *See Woodruff*, 80 Fed. Cl. at 813 ("Since subsection (b)(1) specifically limits the agency official's discretion to waive a claim when specific factors are present, the conclusion regarding section (a) . . . must be that the responsible agency official is vested with discretion to grant or deny a waiver in other circumstances[.]"); *Lawrence*, 69 Fed. Cl. at 556 ("If those bars to waiver — fraud, misrepresentation, fault or lack of good faith — are not present, the statute does not mandate waiver of the debt —

8

waiver is a matter left to the discretion of the official."). Accordingly, 5 U.S.C. § 5584 is not a money-mandating statute for purposes of Tucker Act jurisdiction.

Furthermore, the policy manual to which Mr. Brandenburg refers — "Chapter Seven of the Treasury Debt Management System, Bureau of the Fiscal Service" — likewise fails to provide a basis for this Court's Tucker Act jurisdiction. The manual directs agencies to "terminate active collection" of a debt when "the agency is unable to collect any substantial amount [of the debt]" and lists "factors an agency should consider in determining the likelihood of recovering a substantial amount of a debt," which include "the debtor's age and health, including disability status." Bureau of the Fiscal Serv., U.S. Dep't of the Treasury, *Managing Federal Receivables: A Guide for Managing Loans and Administrative Debt*, 7-4-5 (2015). In other words, the manual guides agencies in determining whether a debt is uncollectable and directs agencies to terminate collection on such debts. In common parlance, it helps agencies decide when the juice is not worth the squeeze. But the manual in no way mandates a waiver of a collectable debt. Accordingly, it cannot be relied upon as a money-mandating source of law to confer jurisdiction on this Court via the Tucker Act.

In sum, because 5 U.S.C. § 5584 is wholly discretionary, and because the aforementioned policy manual neither mandates the waiver of a debt nor the payment of money, Mr. Brandenburg has failed to identify a money-mandating source of law to support his claims. His claims for a refund of his repaid debt must be dismissed for lack of jurisdiction.

### C. Mr. Brandenburg Fails to State an Illegal Exaction Claim Upon Which Relief May Be Granted

Construing the allegations in Mr. Brandenburg's complaint liberally (considering his *pro se* status), this Court concludes that his request for a "reimbursement of any and all amounts already paid to the State Department," Compl. at 5, may be generously construed as an illegal exaction claim. This characterization, however, does not save Mr. Brandenburg's complaint. His illegal exaction claim fails for the same reason a money-mandating claim fails: there is no right to a waiver of an overpayment debt pursuant to 5 U.S.C. § 5584, and the government's collection of such a debt does not contravene the law. That means the government did not improperly extract or fail to return any sum of money Mr. Brandenburg paid to the government in satisfaction of the debt arising from the salary overpayment.

Illegal exaction claims involve "money that was improperly paid, exacted, or taken from the claimant in contravention of the Constitution, a statute, or regulation." *Norman v. United States*, 429 F.3d 1081, 1095 (Fed. Cir. 2005) (citing *Eastport*, 372 F.2d at 1007); *see also Auto Club Ins. Ass'n v. United States*, 103 Fed. Cl. 268, 273-74 (2012) (describing an illegal exaction as "a non-tortious, non-contractual claim for money damages"); *Aerolineas Argentinas v. United States*, 77 F.3d 1564, 1572 (Fed. Cir. 1996) ("Tucker Act claims may be made for recovery of monies that the government has required to be paid contrary to law."). To properly plead an illegal exaction claim that will survive a motion to dismiss, a plaintiff need not point to a money-mandating source of law. *See Boeing Co. v. United States*, 968 F.3d 1371, 1382-84 (Fed. Cir. 2020) (finding jurisdiction over a statutory illegal exaction claim without regard to whether the statute is money-mandating); *Perry*, 149 Fed. Cl. at 32 ("[T]here is no basis to engraft money-mandating requirements onto illegal exaction claims . . . [A] plaintiff need not identify a money-mandating provision of law to invoke this Court's jurisdiction for an illegal exaction claim."). Rather, a plaintiff must allege facts demonstrating that: "(1) money was taken by the government and (2) the exaction violated a provision of the Constitution, a statute, or a regulation." *Piszel v. United States*, 121 Fed. Cl. 793, 801 (2015) (citation omitted), *aff'd*, 833 F.3d 1366 (Fed. Cir. 2016). Put differently, the claim must allege that "the Government has the citizen's money in its pocket." *Eastport*, 372 F.2d at 1008 (quoting *Clapp v. United States*, 127 Ct. Cl. 505, 512 (1954)). Mr. Brandenburg's claim, however, fails to meet this standard.

Mr. Brandenburg asserts that following the DOS's "arbitrary" denial of his waiver request, he "was forced into a repayment agreement with the Department" and therefore has a "non-contractual claim where Plaintiff seeks the return of monies paid to the government." Pl. Resp. at 14. But Mr. Brandenburg's claim would constitute an illegal exaction only if he alleged facts demonstrating that the collected debt had been "improperly paid, exacted, or taken" from him — or was otherwise retained — "in contravention of the Constitution, a statute, or regulation." *Norman*, 429 F.3d at 1095. Mr. Brandenburg cannot do so. He has not contested that DOS overpaid him, and the authority he cites to challenge the collection of this debt, 5 U.S.C. § 5584, expressly "commits the decision whether to waive an employee's debt to the discretion of the agency[.]" *Lawrence*, 69 Fed. Cl. at 554-55. Mr. Brandenburg cannot show that the government's collection of the overpayment is somehow illegal. And, as the government correctly contends, Def. Rep. at 20, the denial of Mr. Brandenburg's waiver request does not transform the lawful collection of an outstanding debt into an illegal exaction. Accordingly, Mr. Brandenburg's illegal exaction claim at a minimum fails as a matter of law and is dismissed pursuant to RCFC 12(b)(6).

**IV.   CONCLUSION**

      For the foregoing reasons, the Court hereby **GRANTS** the government's motion to dismiss for lack of subject-matter jurisdiction pursuant to RCFC 12(b)(1) and for failure to state a claim upon which relief may be granted pursuant to RCFC 12(b)(6).  The Clerk of the Court is directed to enter **JUDGMENT** for the government, dismissing this case.

      **IT IS SO ORDERED**.

      <u>s/Matthew H. Solomson</u>
      Matthew H. Solomson
      Chief Judge